UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :       **SEALED INDICTMENT**

          - v. -                  :       20 Cr.

BRIAN KOLFAGE,                    :
STEPHEN BANNON,                           **20 cr 412**
ANDREW BADOLATO, and              :
TIMOTHY SHEA,                     :

          Defendants.             :

- - - - - - - - - - - - - - - - - X

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

Overview

1.    BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, and others, orchestrated a scheme to defraud hundreds of thousands of donors, including donors in the Southern District of New York, in connection with an online crowdfunding campaign ultimately known as "We Build The Wall" that raised more than $25,000,000 to build a wall along the southern border of the United States.  To induce donors to donate to the campaign, KOLFAGE and BANNON - each of whom, as detailed herein, exerted significant control over We Build the Wall - repeatedly and falsely assured the public that KOLFAGE would "not take a penny in salary or compensation" and that "100% of the funds raised . . .

will be used in the execution of our mission and purpose" because, as BANNON publicly stated, "we're a volunteer organization."

2.     Those representations were false.  In truth, BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, collectively received hundreds of thousands of dollars in donor funds from We Build the Wall, which they each used in a manner  inconsistent  with  the  organization's  public representations.  In particular, KOLFAGE covertly took more than $350,000 in funds that had been donated to We Build the Wall for his personal use, while BANNON, through a non-profit organization under his control ("Non-Profit-1"), received over $1,000,000 from We Build the Wall, which BANNON used to, among other things, secretly pay KOLFAGE and to cover hundreds of thousands of dollars in BANNON's personal expenses.  To conceal the payments to KOLFAGE from We Build the Wall, KOLFAGE, BANNON, BADOLATO, and SHEA devised a scheme to route those payments from We Build the Wall to KOLFAGE indirectly through Non-Profit-1 and a shell company under SHEA's control, among other avenues.  They did so by using fake invoices and sham "vendor" arrangements, among other ways, to ensure, as KOLFAGE noted in a text message to BADOLATO, that his pay arrangement remained "confidential" and kept on a "need to know" basis.

2

Background on We Build the Wall

3.   On or around December 17, 2018, BRIAN KOLFAGE, the defendant, with the assistance of others, launched a fundraising campaign, originally called "We the People Build the Wall," on a crowdfunding website (the "Crowdfunding Website"). According to statements on the webpage for "We the People Build the Wall" on the Crowdfunding Website, the campaign was raising funds to donate to the United States federal government for construction of a wall at the southern border of the United States. The webpage also stated that "100% of your donations" would be given to the government for the construction of a wall, and that if the campaign could not attain its goal, it would "refund every single penny."

4.   The "We the People Build the Wall" campaign was an immediate fundraising success. Within the first week, BRIAN KOLFAGE, the defendant, with the assistance of TIMOTHY SHEA, the defendant, raised approximately $17,000,000. Despite its early success, the campaign also drew scrutiny, including questions about KOLFAGE's background and the campaign's plan to give the money raised to the federal government for the purpose of constructing a wall at the southern border of the United States.

5.   Based on those concerns, in or around December 2018, the Crowdfunding Website suspended the campaign – which by that point had raised more than $20,000,000 – and warned BRIAN KOLFAGE, the defendant, that unless he identified a legitimate

non-profit organization into which those funds could be transferred, the Crowdfunding Website would return the funds.

6.     Around the same time, BRIAN KOLFAGE, the defendant, involved STEPHEN BANNON and ANDREW BADOLATO, the defendants, in the leadership of the campaign.  BANNON, a political strategist and former media executive, and BADOLATO, an entrepreneur and venture capitalist, were already working together on Non-Profit-1, which was a separate Section 501(c)(4) organization founded by BANNON with the stated purpose of promoting economic nationalism and American sovereignty.

7.     Within days of becoming involved, STEPHEN BANNON and ANDREW BADOLATO, the defendants, took significant control of the fundraising campaign's organization and day-to-day activities, including its finances, messaging, donor outreach, and general operations.  Specifically, in or around late December 2018, BANNON and BADOLATO, working with BRIAN KOLFAGE, the defendant, oversaw the creation of a new Section 501(c)(4) organization – We Build the Wall Inc. – to which they proposed that the money that had been raised by "We the People Build the Wall" could be transferred. BANNON, BADOLATO, and KOLFAGE formed We Build the Wall Inc. to continue fundraising activities relating to wall construction, with the modified purpose of funding the *private* construction of a wall along the southern border of the United States.

4

8.   Moreover, BRIAN KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, made and caused to be made a series of representations and gave assurances to the Crowdfunding Website intended to induce the Crowdfunding Website to release the donor funds to We Build the Wall.   These assurances included, among other things, written bylaws with conflict of interest provisions and compensation restrictions precluding insiders like KOLFAGE, among others, from improperly misappropriating donor funds, and a promise that "Kolfage will take no salary" and "will personally not take a penny of compensation from these donations."   KOLFAGE, BANNON and BADOLATO also agreed that donors would have to "opt in" to having their contribution redirected from the Crowdfunding Website to We Build the Wall.

### The Use of We Build the Wall to Perpetrate the Fraud

9.   Beginning in January 2019, BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, caused We Build the Wall to mislead donors, promising them repeatedly that "100 percent" of the funds would be used for construction of a wall and that KOLFAGE, in particular, would take no salary or compensation from the new organization.   Contrary to the representations both to donors and to the Crowdfunding Website, KOLFAGE, BANNON, BADOLATO, and SHEA worked together to misappropriate hundreds of thousands of dollars of those funds for their own personal benefit.

5

10. Beginning on or around January 11, 2019, and consistent with the assurances provided to the Crowdfunding Website, We Build the Wall announced that it had changed its mission to the private construction of a wall, and that donors needed to "opt in" to having their donation transferred to We Build the Wall for this purpose. In essence, under We Build the Wall's agreement with the Crowdfunding Website, BRIAN KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, had to effectively re-raise the approximately $20,000,000 they had already raised from donors by convincing them to "opt in" and thereby permit their donations to be transferred to We Build the Wall.

11. To do so, BRIAN KOLFAGE, STEPHEN BANNNON, and ANDREW BADOLATO, the defendants, caused We Build the Wall to promise donors that "100% of funds raised" would be used toward the construction of a wall, and that not a "penny" would be used to compensate KOLFAGE. That promise was repeatedly made in donor solicitations, public statements, social media posts, and press appearances by KOLFAGE and BANNON, and others acting at KOLFAGE's, BANNON's, and BADOLATO's direction. For example, We Build the Wall's website told prospective donors that, "In accordance with Mr. Kolfage's personal pledge and the Bylaws . . . Mr. Kolfage will not profit even a penny from We Build the Wall Inc." KOLFAGE similarly and repeatedly promised in fundraising solicitation emails, which BANNON and BADOLATO reviewed and approved, that he

6

would "not take a penny in salary or compensation."   KOLFAGE posted messages on social media that included representations such as: "We promised 100% of the funds raised on [the Crowdfunding Website] only go towards border wall construction," "All money donated to the [We Build the Wall] campaign goes directly to wall!!! Not anyone's pocket," and "I'm taking nothing! Zero."   In fact, KOLFAGE went so far as to send mass emails to his donors asking them to purchase coffee from his unrelated business, telling donors that the coffee company was the only way "he keeps his family fed and a roof over their head," because KOLFAGE was taking "no compensation" from We Build the Wall.

12.   KOLFAGE also touted the bylaws that We Build the Wall had ratified at the request of the Crowdfunding Website, saying publicly and in media interviews, for example, "It states in our bylaws I take $0 no salary no compensation," and "I won't take a penny from these donations" and "It's not possible to steal the money. . . . We have an advisory committee. . . . I can't touch that money. It's not for me. We have bylaws set up."

13.   BRIAN KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, and others acting at their direction, approved these statements – which were false - precisely because they understood and expected that donors would rely upon these representations, which were intended to maximize the fundraising potential of We Build the Wall.   Indeed, in developing their

7

strategy of emphasizing to donors that KOLFAGE would "not be paid a dime," BANNON and BADOLATO, in a text message exchange, discussed how that message would help drive fundraising and opt-ins by prior donors because it would, as BADOLATO stated, become "the most talked about media narrative ever" since it "removes all self-interest taint" and "gives [B]rian Kolfage saint hood." For that reason, BADOLATO insisted that the statement that KOLFAGE "will not take a penny of compensation" be included in the email to We Build the Wall's donors about the opt-in process, explaining in an email that this statement was a "material item" to donors.

14. Moreover, in addition to statements that BRIAN KOLFAGE, the defendant, would not be "paid a dime," KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, conveyed that others in the leadership of We Build the Wall and its advisory board (which BANNON chaired) would not be compensated. For example, KOLFAGE wrote on social media, "I thought it was pretty clear. I made a promise that I would NEVER take a penny 100% of fundraising through . . . donations will only go towards the wall. 100% means 100% right? Board won't see any of that money!" Moreover, during interviews and We Build the Wall events, BANNON himself stated, "I did this kind of as a volunteer" and "we're a volunteer organization."

15. Donors took notice of this core narrative and told BRIAN KOLFAGE, the defendant, and others working for We Build the

Wall that it mattered to them.  Some of those donors wrote directly to KOLFAGE that they did not have a lot of money and were skeptical about online fundraising campaigns, but they were giving what they could because they trusted KOLFAGE would keep his word about how their donations would be spent.  KOLFAGE also wrote to prospective donors who raised concerns, assuring the donors in private messages that he was not being compensated.

16.  These false assurances successfully induced donors to give money to We Build the Wall and to opt in to have their prior donations transferred to We Build the Wall's new non-profit entity.  Of the original $20,000,000 raised from hundreds of thousands of donors, most of the donors agreed to "opt in" and allow their donations to be transferred to We Build the Wall under the false premise that "100% of fundraising through . . . donations will only go towards the wall" and that BRIAN KOLFAGE, the defendant, would not take any compensation for his work. Moreover, We Build the Wall continued to raise new funds from additional donors based on those false representations.  In total, between the beginning of the "opt in" period in January 2019 and October 2019, We Build the Wall raised approximately $25,000,000 in new or opted-in donor funds, under the false assurance that 100 percent of money donated would go to construction of the wall.

## The Defendants' Self-Enrichment from We Build the Wall's Funds

17. Despite these repeated assurances, the public narrative deliberately crafted by BRIAN KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, and others, was false. In fact, although We Build the Wall spent money on the construction of a border wall, hundreds of thousands of dollars were siphoned out of We Build the Wall for the personal use and benefit of KOLFAGE, BANNON, BADOLATO, and TIMOTHY SHEA, the defendant. Indeed, despite KOLFAGE's numerous public statements that he was not taking a salary or getting a penny in compensation, within days of launching We Build the Wall, KOLFAGE, working primarily with BANNON and BADOLATO, reached a secret agreement whereby KOLFAGE would be covertly paid "$100k upfront [and] then 20 [per] month." Because that arrangement was directly contrary to the defendants' repeated public representations, KOLFAGE, BANNON, BADOLATO, SHEA, and others schemed to pass these payments to KOLFAGE indirectly from We Build the Wall through third parties, including entities under the control of BANNON and SHEA.

18. To preserve the secrecy of the arrangement to pay BRIAN KOLFAGE, the defendant, with We Build the Wall's donor funds, STEPHEN BANNON, the defendant, agreed to pass payments from We Build the Wall to KOLFAGE through Non-Profit-1, which, as noted above, was controlled by BANNON, with the assistance of ANDREW BADOLATO, the defendant, and others. In approving that

10

arrangement, BANNON made clear in a text message to BADOLATO that there would be "no deals I don't approve," and directed that KOLFAGE be paid indirectly through Non-Profit-1 in an attempt to conceal the payments from the public, notwithstanding the fact that KOLFAGE did no work for Non-Profit-1 and that the payments from Non-Profit-1 to KOLFAGE would be funded by We Build the Wall.

19. Consistent with that scheme, on or around February 11, 2019, STEPHEN BANNON and ANDREW BADOLATO, the defendants, caused Non-Profit-1 to pay BRIAN KOLFAGE, the defendant, $100,000 in funds from We Build the Wall. Text messages exchanged between BANNON and BADOLATO, and others, confirm the payment was intended as a salary for KOLFAGE and that the payment would be funded by We Build the Wall. In particular, in the days prior to the payment, BANNON directed BADOLATO in a text message to send a "wire of cash to [Non-Profit-1]" from We Build the Wall; and shortly thereafter Non-Profit-1's bank account received a $250,000 wire from We Build the Wall. No more than a week later, that same bank account was used to make a $100,000 wire transfer to KOLFAGE. In each of the following two months, BANNON again paid KOLFAGE — each time, a $20,000 monthly salary payment, consistent with the secret deal BANNON had approved, as described above - using funds that had been wired into Non-Profit-1's bank account from We Build the Wall shortly before the payment to KOLFAGE. When KOLFAGE later noted in a text message to BADOLATO

11

that, at least in part as a result of these pass-through payments,
We Build the Wall would have to disclose substantial payments to
Non-Profit-1 on tax forms, BADOLATO replied, "Better than you or
me lol." To conceal the payments KOLFAGE received from Non-
Profit-1, KOLFAGE instructed BADOLATO that the payments should be
made to KOLFAGE's spouse, and Non-Profit-1 subsequently issued a
Form 1099 falsely stating that it had paid KOLFAGE's spouse for
"media."

20. Thereafter, beginning in or around April 2019, and
to further conceal payments of We Build the Wall funds to BRIAN
KOLFAGE, the defendant, his secret monthly salary of approximately
$20,000 was passed indirectly through other third-party entities
that were purported vendors for We Build the Wall, including one
under the control of TIMOTHY SHEA, the defendant. Starting in or
around March 2019, SHEA – who had been involved in early operations
of the predecessor campaign to We Build the Wall, and was familiar
with We Build the Wall's repeated promises that KOLFAGE, in
particular, would take no salary – proposed, in a text message
exchange with KOLFAGE, paying KOLFAGE and himself out of a "veiled"
shell corporation to conceal the source and nature of the payments.
SHEA suggested that to conceal transactions where, for instance,
"600k comes in and [he] transfers 300k" to KOLFAGE, they could
"create companies that . . . hired [KOLFAGE and SHEA] . . . for a
service," like "consulting." To further conceal the secret

12

arrangement, KOLFAGE later told SHEA in an email that they could falsely describe the payments from the new shell entity to KOLFAGE as for "social media."

21. Consistent with the scheme detailed above, in or around April 2019, TIMOTHY SHEA, the defendant, incorporated an anonymous limited liability corporation ("Shell Company-1"), and then began receiving payments from We Build the Wall, a share of which SHEA then paid over to BRIAN KOLFAGE, the defendant.  For example, on or around April 22, 2019, Shell Company-1 received a $50,000 wire from We Build the Wall, and four days later paid half of that amount to KOLFAGE.  Again, on or around May 21, 2019, Shell Company-1 received a $30,000 wire from We Build the Wall, and on or around June 5, 2019, paid $20,000 to KOLFAGE.  The memo lines on these payments from We Build the Wall to Shell Company-1 falsely stated, as KOLFAGE had suggested, that they were for "social media" accounts and pages when, in fact, neither KOLFAGE nor anyone else had done such work for Shell Company-1.  In each instance, SHEA kept the remaining balances of money.  Moreover, additional $20,000 payments from Shell Company-1 to KOLFAGE, and funded by money from We Build the Wall, were made in subsequent months until at least October 2019, when, as discussed below, the

13

defendants learned that they might be under criminal investigation.

22. In addition to the payments above, ANDREW BADOALTO, the defendant, also arranged for additional $20,000 salary payments to be made from We Build the Wall to BRIAN KOLFAGE, the defendant, that were passed through bank accounts under the control of two of BADOLATO's associates. First, in or around June 2019, and to pay KOLFAGE's $20,000 salary from We Build the Wall for the month of June 2019, BADOLATO gave a $50,000 check from We Build the Wall to an associate ("Associate-1") purportedly for work done for We Build the Wall. Associate-1 then cashed the check and paid $20,000 of the funds to KOLFAGE, keeping the balance. Additionally, in or around late July and early August 2019, BADOLATO caused We Build the Wall to pay over $150,000 to a construction contractor ("Associate-2"). Associate-2 then paid $70,000 of those funds to KOLFAGE, another $50,000 of those funds to BADOLATO, and $20,000 to an attorney working on a matter for BADOLATO unrelated to We Build the Wall.

23. In total, from the creation of We Build the Wall in January 2019 to in or around October 2019, BRIAN KOLFAGE, the defendant, received more than $350,000 in donor funds from We Build the Wall, all passed indirectly at the direction and with the assistance of STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, through Non-Profit-1, Shell Company-1, and the

accounts controlled by Associate-1 and Associate-2. KOLFAGE then used those funds to pay for his own personal expenses, including, among other purposes, home renovations, payments toward a boat, a luxury SUV, a golf cart, jewelry, cosmetic surgery, personal tax payments, and credit card debt.

24. Moreover, in addition to BRIAN KOLFAGE, the defendant, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, each received hundreds of thousands of dollars in donor funds from We Build the Wall, which they each used to pay for a variety of personal expenses, including, among other things, travel, hotels, consumer goods, and personal credit card debts, in addition to the payments described above to KOLFAGE. With respect to BANNON, in particular, as noted above, Non-Profit-1 received over $1,000,000 from We Build the Wall, and while some of that money was used to pay KOLFAGE, as detailed above, BANNON used a substantial portion of those donor funds for personal uses and expenses unrelated to We Build the Wall.

25. None of these payments to BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, were ever disclosed to the public. Instead, the defendants repeatedly and intentionally led the public to believe that none of their donations would be used for the personal benefit of the defendants. Indeed, as KOLFAGE noted to BADOLATO in a text message exchange,

"[a]s far as [the public] know[s] no one is getting paid" and "[s]alaries will never be disclosed."

## The Defendants' Concealment After Learning of the Criminal Investigation

26. In or around October 2019, BRIAN KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, and others learned from a financial institution that We Build the Wall might be under federal criminal investigation. The defendants thereafter took additional steps to conceal the fraudulent scheme detailed above. For example, around that time, and in reaction to the potential investigation, KOLFAGE and BADOLATO began using encrypted messaging applications on their phones, and We Build the Wall's website was changed to remove any mention of the promise that KOLFAGE was not being compensated and to add a statement that he would be paid a salary starting in January 2020. KOLFAGE also stopped receiving secret salary payments after this date.

## Statutory Allegations

27. From at least in or around December 2018 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to

commit wire fraud, in violation of Title 18, United States Code, Section 1343.

28. It was a part and object of the conspiracy that BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, KOLFAGE, BANNON, BADOLATO, SHEA, and others known and unknown, agreed to make and caused to be made false statements to donors that 100 percent of the funds donated to We Build the Wall would be used for construction of a wall at the southern border of the United States, and that none of the money donated would be used to compensate KOLFAGE.

29. It further was a part and object of the conspiracy that BRIAN KOLFAGE, STEPHEN BANNON, and ANDREW BADOLATO, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and

fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, KOLFAGE, BANNON, BADOLATO, and others known and unknown, agreed to make and caused to be made false statements to the Crowdfunding Website about their intended use of donated funds and their intent to implement and adhere to internal controls designed to prevent the misappropriation of money in order to cause the Crowdfunding Website to release donor funds held by the Crowdfunding Website to the defendants.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

30. The Grand Jury incorporates the allegations contained in paragraphs 1 through 26 of this Indictment as though fully set forth herein.

31. From at least in or around December 2018 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, and

18

others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

32. It was a part and an object of the conspiracy that BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, and others known and unknown, in an offense involving interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, wire transfers and checks, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracy to commit wire fraud alleged in Count One of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control, of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

33. It was a further part and an object of the conspiracy that BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, and others known and unknown, within the United States, knowingly would and did engage and attempt to engage in monetary transactions in criminally derived

property of a value greater than $10,000 and that was derived from specified unlawful activity, to wit, the conspiracy to commit wire fraud alleged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

34. As a result of committing the offense alleged in Count One of this Indictment, BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and the following specific property:

a. Any and all funds contained in FirstBank account number 2021299187 held in the name of WeBuildtheWall, Inc.;

b. Any and all funds contained in Capital One account number 3027095806 held in the name of WeBuildtheWall, Inc.;

c. Any and all funds contained in Bank First account number 18038943 held in the name of WeBuildtheWall, Inc.;

d.   Any and all funds contained in Wells Fargo Bank account number 3536261401 held in the name of Citizens of the American Republic;

e.   Any and all funds contained in US Bank account number 103685954630 held in the name of Ranch Property Marketing & Management LLC;

f.   Any and all funds contained in Wells Fargo Bank account number 3033354584 held in the name of Freedom Daily LLC;

g.   Any and all funds contained in PenFed Credit Union account number 7218209026 held in the name of Brian Kolfage;

h.   Any and all funds contained in Bank First account number 3746617009 held in the name of America First Medical LLC;

i.   Any and all funds contained in Capital One account number 18046276 held in the name of America First Medical LLC;

j.   Any and all funds contained in SunTrust Bank account number 1000212076664 held in the name of White Knights & Vultures LLC;

k.   Any and all funds contained in US Bank account number 103682158292 held in the name of Timothy Shea;

l.   The real property described as a 2019 Jupiter Marine boat named "Warfighter"; and

m.   The real property described as a 2018 Land Rover Range Rover with vehicle identification number SALGS5RE9JA500442.

21

35. As a result of committing the offense alleged in Count Two of this Indictment, BRIAN KOLFAGE, STEPHEN BANNON, ANDREW BADOLATO, and TIMOTHY SHEA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and the specific property enumerated in paragraph 34(a) through (m).

## Substitute Assets Provision

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code,

22

Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
Acting United States Attorney

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

BRIAN KOLFAGE,
STEPHEN BANNON,
ANDREW BADOLATO, and
TIMOTHY SHEA,

Defendants.

SEALED INDICTMENT

20 Cr.

18 U.S.C. §§ 1349 and 1956(h)

AUDREY STRAUSS
Acting United States Attorney

A TRUE BILL

_____ Foreperson.